[Civ. No. 33427.   Second Dist., Div. Three.   Aug. 29, 1968.]

PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; X AND Y CONSTRUCTION COMPANY et al., Real Parties in Interest.

Lawler, Felix & Hall and Leslie C. Tupper for Petitioner.

No appearance for Respondent.

Burton Marks and Harvey Schneider for Real Parties in Interest.

McCOY, J. pro tem.*—This is a proceeding for a writ of prohibition restraining the Superior Court for Los Angeles

_____
*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

County from enforcing an order setting certain contempt proceedings for trial before a jury. We have concluded that the writ must be granted.

There is now pending in the respondent court· an action entitled The Pacific Telephone and Telegraph Company v. X and Y Construction Company, et al. On May 2, 1967, a preliminary injunction was issued in that action enjoining defendants X and Y. Construction Company and Sam Len during the pendency of the action from placing or attaching any advertisement or other material referring to any business or occupation on plaintiff's public telephones, and from inserting or attaching any such material in or on plaintiff's telephone directories. This preliminary injunction was served on defendants Sam Len and X and Y Construction Company, hereinafter referred to as the defendants, within a week after it was issued.

On May 15, 1968, the respondent court issued an order commanding the defendants to show cause on May 31 why they should not be adjudged guilty of contempt for wilfully disobeying the preliminary injunction on a single occasion on May 4, 1968, as described in the declarations referred to in the order. Defendants appeared and filed the declaration of their attorney in which he denied on their behalf all the material allegations of the declarations and denied that defendants had committed any act constituting contempt of court. Hearings on the order to show cause were held on June 13 and June 28, 1968.

On June 28, 1968, the court set the order to show cause for jury trial on October 18, and ordered the defendant Sam Len to return at that time.[1] Petitioner now seeks a writ prohibiting the respondent court from enforcing this order.

The contempt proceedings against defendants in the case before us were brought under the provisions of sections 1209 through 1222 of the Code of Civil Procedure. ▉ Such a proceeding, as distinguished from those prosecuted under section 166 of the Penal Code, "is not a criminal action or proceeding. It is a special proceeding, criminal in character, governed by the provisions of the Code of Civil Procedure, not by those of the Penal Code; not for the punishment of an offense

[1]The minutes of June 28 also show that the same day the court denied plaintiff's motion "for reconsideration of Order of June 13, 1968, directing Jury Trial on Order to Show Cause in re Contempt." The transcript of the proceedings on June 13 shows that defendants requested a trial by jury and that the court granted the motion (Pet. p. 58, line 22— p. 62, line 19) but no such order was entered in the minutes.

against the state, but intended to implement the inherent power of the court to conduct the business of the court and enforce the lawful orders of the court. (*Bridges* v. *Superior Court,* 14 Cal.2d 464, 473-477 [94 P.2d 983].)'' (*Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 570 [230 P.2d 71] ; *In re Morris,* 194 Cal. 63, 68-69 [227 P. 914].)

In *Bridges* v. *Superior Court,* 14 Cal.2d 464 [94 P.2d 983], involving a contempt proceeding brought under sections 1209, et seq., of the Code of Civil Procedure, petitioner contended that he had been denied his constitutional right to a trial by jury. On review the court said (pp. 477-478) : ''Section 1217 of the Code of Civil Procedure provides otherwise, that is, for a trial before the court in which the proceeding is pending. No authority in this state is cited by petitioner in support of his present contention. It has been the universal practice in this state from its earliest history to try proceedings in contempt by the court without a jury. Scores of cases have been before this court in which the accused has been tried and convicted of contempt as a result of trials by the court alone, and in not a single instance to which our attention has been called was the point ever raised that the accused was entitled to a trial by jury. . . . 'A respondent in contempt proceedings is not entitled to a trial by jury except where a jury trial is expressly provided for by statute, and then only in the particular cases to which the statute applies. The fact that the act constituting contempt may also be an indictable offense does not affect the rule where the proceeding is not by indictment. The power of the court to punish summarily for contempt has existed from the earliest period of the common law and is not within the application of constitutional provisions guaranteeing a trial by jury, or providing against depriving persons of their liberty without due process of law.' (35 Cor.Jur., Juries, sec. 99, p. 194. See, also, 16 R.C.L., p. 205, and cases cited in 48 Am.Dec. 192; *O'Brien* v. *People,* 216 Ill. 354 [75 N.E. 108, 108 Am.St.Rep. 219, 3 Ann. Cas. 966] ; *O'Flynn* v. *State,* 89 Miss. 850 [43 So. 82, 119 Am.St. Rep. 727, 11 Ann. Cas. 530, 9 L.R.A. (N.S.) 1119] ; *State* v. *North Shore Boom Co.,* 67 Wash. 317 [121 P. 467, Ann. Cas. 1913D 458].) Finally, upon this point, we quote from the *Debs* case, *supra* [*In re Debs,* 158 U.S. 564 (39 L.Ed. 1092, 15 S.Ct. 900)], where the court, at page 594 [39 L.Ed. at p. 1106], states, 'But the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from

time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency.' ''[2]

Defendants contend that this court should now hold that *Bridges* v. *Superior Court, supra,* is no longer the law of this state, and should hold that they are now entitled to a trial of the charges against them by a jury, by reason of the recent decisions of the Supreme Court of the United States in *Duncan* v. *Louisiana,* 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444], *Bloom* v. *Illinois,* 391 U.S. 194 [20 L.Ed.2d 522, 88 S.Ct. 1477], and *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472]. Defendants' contention cannot be sustained. On the contrary, *Duncan, Bloom* and *Dyke,* as we read them, fully support the holding of the court in *Bridges,* albeit for a reason not there considered.

■ The question before us is whether a charge of contempt under section 1209 of the Code of Civil Procedure is a ''petty offense'' within the meaning of *Duncan, Bloom,* and *Dyke.* We think that it is.

In *Duncan* the appellant was tried and convicted without a jury on a charge of simple battery which, under the laws of Louisiana, was punishable by a fine of not more than $300, or imprisonment for not more than two years, or both. Holding that a crime carrying such a penalty must be tried by a jury the court said (20 L.Ed.2d at p. 502) : ''It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses, *Cheff* v. *Schnackenberg* (1966) 384 U.S. 373 [16 L.Ed.2d 629, 86 S.Ct. 1523]. But the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment. *District of Columbia* v. *Clawans* (1937) 300 U.S. 617 [81 L.Ed. 843, 57 S.Ct. 660]. The penalty

[2]*Bridges* v. *Superior Court,* 14 Cal.2d 464 [94 P.2d 983], was reversed on other grounds in *Bridges* v. *California,* 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346].

authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments,' 300 U.S., at p. 628, 81 L.Ed. at p. 848, of the crime in question.''

The petitioner in *Bloom* was tried without a jury on a charge of criminal contempt for which no maximum punishment was provided by the laws of Illinois. Upon conviction he was sentenced to imprisonment for 24 months. Again the Supreme Court reversed, holding that (20 L.Ed.2d at p. 526) ''serious contempts are as nearly like other serious crimes that they are subject to the jury trial provisions of the Constitution, now binding on the States,'' recognizing at the same time that (20 L.Ed.2d at p. 533) ''petty crimes need not be tried to a jury.'' Here, as in *Duncan*, the court did not find it necessary to settle the exact location of the line between petty offenses and serious crimes. Here, in the absence of any maximum penalty fixed by statute, the court looked ''to the penalty actually imposed as the best evidence of the seriousness of the offense,'' and held that the crime for which Bloom was convicted was ''a serious crime and not a petty offense.'' (20 L.Ed.2d at p. 534.)

*Dyke*, as we read it, squarely answers the question before us. In that case petitioners had been found guilty of contempt for violating an injunction, and were each given the maximum sentence authorized by statute, 10 days in jail and a $50 fine. Rejecting petitioners' contention that a denial of their request for trial by jury violated their constitutional rights the court said, after referring to the decisions in *Duncan* and *Bloom* (391 U.S. 216, 20 L.Ed.2d at pp. 542-543) : ''The *Bloom* and *Duncan* cases, however, have reaffirmed the view that the guarantee of jury trial does not extend to petty crimes, As *Bloom* makes clear, 391 U.S. at pp. 195-200, 20 L. Ed.2d at p. 522, criminal contempt has always been thought not to be a crime of the sort that requires jury trial regardless of the penalty authorized. Alleged criminal contemnors must be given jury trial, therefore, unless the legislature has authorized a maximum penalty within the 'petty offense' limit or, if the legislature has made no judgment about the maximum penalty that can be imposed, unless the penalty actually imposed is within that limit. This Court has not had occasion to state precisely where the line falls between punishments that can be considered 'petty' and those that cannot be. From *Cheff* v. *Schnackenberg* (1966) 384 U.S. 373 [16 L.Ed.2d 629, 86 S.Ct. 1523], it is clear that a six-month sentence is short enough to be 'petty.' That holding is sufficient for resolution

of this case. Here the maximum penalty which Tennessee statutes permitted the chancellor to impose was 10 days in jail and a fine of $50. The contempt was therefore a 'petty offense,' and petitioners had no federal constitutional right to jury trial.''

Section 1218 of the Code of Civil Procedure provides that ''if it be adjudged that he is guilty of the contempt [charged], a fine may be imposed on him not exceeding five hundred dollars ($500), or he may be imprisoned not exceeding five days, or both.'' Measured by *Duncan, Bloom* and *Dyke*, there is no doubt that a contempt charged under the provisions of section 1209 of the Code of Civil Procedure is a petty offense and that the person so charged has no federal constitutional right to a jury trial.

Defendants also contend that even though a person charged with civil contempt is not entitled to a jury as a matter of federal constitutional law, it is within the sound discretion of the trial court to grant a jury trial if the court wishes to do so. This contention is without merit.

Section 1217 of the Code of Civil Procedure reads in part: ''When the person arrested has been brought up or appeared, the court or judge must proceed to investigate the charge, and must hear any answer which the person arrested may make to the same, . . .'' This section as interpreted in *Bridges* v. *Superior Court, supra,* 14 Cal.2d 464, 477-478, leaves no room for the exercise of any discretion in the trial court to grant a jury trial in civil contempt cases.

Let a peremptory writ of prohibition issue restraining the respondent court from enforcing its order that the contempt charged against defendants shall be tried to a jury.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied September 19, 1968, and the petition of the real parties in interest for a hearing by the Supreme Court was denied October 23, 1968. Sullivan, J., did not participate therein.